**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**DARREN HIGHTOWER,**

      **Petitioner,**

  **v.**                                                    **9:02-CV-0683**
                                      **(LEK) (GJD)**

**JOSEPH E. MCCOY, Superintendent,**

      **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PETITIONER:**

DARREN L. HIGHTOWER
19 Arlington Place
Apt. 42
Buffalo, NY 14201

**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**             **MARIA MORAN, Esq.**
Office of the Attorney General     Assistant Attorney Gen'l
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**GUSTAVE J. DIBIANCO, MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION

**I.**   **Background**

    **A.**   **State Court Proceedings**

The testimony adduced at trial reveals that on the evening of

December 6, 1999, Daniel Babbage, an officer of the Syracuse Police Department, assisted in the execution of a search warrant at a residence located on Costello Court in the City of Syracuse at which crack cocaine was believed to be located.  *See* Transcript of Trial of Darren L. Hightower (6/6/2000) ("Trial Tr.") at pp. 252-54.  At approximately 11:00 p.m., Officer Babbage entered the residence pursuant to the search warrant and observed five adults shooting dice.  Trial Tr. at pp. 255-56.  Officer Babbage testified that one of those individuals, petitioner, *pro se* Darren L. Hightower, immediately jumped to his feet and turned toward the officer.  Trial Tr. at p. 257.  As Officer Babbage attempted to handcuff Hightower, a "knotted piece of plastic" which contained a "beige chunky rock type substance," fell from Hightower's waistband.  Trial Tr. at pp. 257-58.  Officer Babbage retrieved the bag and noticed that it contained nine smaller plastic baggies, each of which contained a substance Officer Babbage believed to be crack cocaine. Trial Tr. at pp. 260, 266.

After Hightower was handcuffed, he was placed face-down on the floor near a television stand.  Trial Tr. at pp. 258-59.  Soon thereafter, Officer Babbage observed Hightower placing his hand down the back of his pants.  Trial Tr. at p. 260.  He then maneuvered his back so that it was

2

adjacent to the television stand, and after Hightower "made a motion with his arms" and rolled back onto his stomach, Officer Babbage noticed a knotted plastic bag, containing what appeared to be crack cocaine, on the television stand.  Trial Tr. at pp. 260-62.[1]  Officer Babbage recovered that bag and thereafter turned both bags over to Detective Frank Fowler of the Syracuse Police Department, who transported the evidence to the police department's crime laboratory.  Trial Tr. at pp. 267-28.

Jennifer Wilson, a forensic chemist employed by the Syracuse Police Department, was assigned to analyze the substances seized from the Costello Court residence.  Trial Tr. at pp. 339-41.  Wilson testified that each of the substances in the smaller baggies in the bag Officer Babbage observed fall from Hightower's waist contained cocaine, and that the aggregate weight of those substances was in excess of one eighth of one ounce.[2]  Trial Tr. at pp. 344-45.  Wilson also weighed the substance contained in the baggie Officer Babbage removed from the television stand at the Costello Court apartment and determined that the substance was

---

[1]    Officer Babbage had not previously observed any contraband on that piece of furniture when Hightower was initially placed on the floor.  Trial Tr. at p. 259.

[2]    The substances in the package that fell from petitioner's waistband weighed 3.99 grams.  Trial Tr. at pp. 344-45.  One-eighth of one ounce weighs 3.54 grams.  Trial Tr. at p. 349.

cocaine and weighed a total of 1.47 grams.  Trial Tr. at p. 349.

On or about February 17, 2000, an Onondaga County grand jury returned a one count indictment against Hightower, charging him with criminal possession of a controlled substance ("CPCS") in the fourth degree. *See* Appendix on Appeal ("App.") at pp. A13-14.  However, that indictment was dismissed by the County Court because the Onondaga County District Attorney's office failed to afford Hightower sufficient notice of its intention to seek an indictment before a grand jury.  App. at pp. A18-20.  A second indictment was thereafter returned against Hightower which charged him with CPCS in the fourth degree, in violation of N.Y. Penal Law § 220.09,[3] as well as CPCS in the seventh degree, in violation of N.Y. Penal L. § 220.03.[4] App. at p. A15 ("Indictment").  Hightower's counsel thereafter filed an omnibus pretrial motion in which he sought, *inter alia*, a Bill of Particulars from the People as well as all *Brady* material[5] in the possession of the

---

[3]     A person is guilty of fourth degree CPCS in New York "when he knowingly and unlawfully possesses ... one or more ... substances containing a narcotic drug and said ... substances are of an aggregate weight of one-eighth ounce or more."  N.Y. Penal L. § 220.09(1).

[4]     In New York, a person is guilty of seventh degree CPCS "when he knowingly and unlawfully possesses a controlled substance."  N.Y. Penal L. § 220.03.

[5]     *Brady v. Maryland*, 373 U.S. 83 (1963).

District Attorney.  *See* App. at pp. A21-29.[6]

Beginning on June 5, 2000, Hightower was tried before a jury on the above charges in Onondaga County court with County Court Judge Joseph E. Fahey presiding.  At the conclusion of that trial, the jury found Hightower guilty of the fourth degree CPCS charge, but not guilty of the CPCS in the seventh degree charge.  Trial Tr. at pp. 445-46.  Defense counsel objected to the verdict, arguing that it was repugnant because Hightower could not have properly been found guilty of possessing cocaine weighing in excess of one-eighth of one ounce, while not guilty of possessing cocaine without reference to any weight.  Trial Tr. at pp. 446-47.  The trial court overruled that objection, finding that the second count in the Indictment was never considered a lesser included offense of the first count, and agreed with the prosecution's argument that the jury assumed that the first count in the Indictment related to the 3.99 grams of cocaine observed by Officer Babbage falling from Hightower's person, while the second count related to the cocaine discovered on the television stand on the night the search warrant was executed.  Trial Tr. at pp. 447-50.

On June 23, 2000, Judge Fahey sentenced Hightower as a predicate

---

[6]     This Court was no provided with a copy of the County Court's decision relating to Hightower's omnibus motion.

felon to a term of imprisonment of seven and one-half to fifteen years

imprisonment.  *See* Transcript of Sentencing in *People v. Hightower*, No.

00-252 (6/23/2000) at p. 11.

Before Hightower's appeal to the New York State Supreme Court

Appellate Division, Fourth Department was perfected, he filed a motion to

vacate his judgment of conviction pursuant to New York Criminal Procedure

Law ("CPL") § 440.10.  In that application, he claimed that his trial counsel

rendered ineffective assistance because he failed to:  i) "competently raise a

4th-Amendment claim;" ii) abandoned a request for a *Mapp-Dunaway*

hearing;[7] iii) did not renew a motion to dismiss the Indictment based upon

insufficiency of evidence; and iv) failed to ensure Hightower's presence at all

material stages of his trial.  *See* CPL § 440 Motion (1/9/01) ("Initial CPL

Motion").  By Order dated April 6, 2001, Judge Fahey denied that motion.  In

that order, the court determined that none of the issues raised by Hightower

in his application related to matters that were not contained in the record,

---

[7]      *Mapp v. Ohio*, 367 U.S. 643 (1961); *Dunaway v. New York*, 442 U.S.
200 (1979).  A *Mapp* hearing is held "to determine whether physical evidence sought
to be used against a criminal defendant was obtained illegally by law enforcement
officers and, thus, is inadmissible at the criminal defendant's trial."  *Montalvo v.
Newton*, 2001 WL 1399527, at *3 n.2  (S.D.N.Y. Mar. 23, 2001).  At a *Dunaway*
hearing, the trial court determines "whether there is probable cause for the
defendant's arrest and whether evidence seized at the time of arrest is admissible."
*Fernandez v. Greiner*, 2002 WL 1205746, at *2 n.3 (S.D.N.Y. Feb. 11, 2002) (citing
*Dunaway*).

and that denial of the motion was therefore required under CPL §

440.10(2)(b).[8]  *See* Order of Judge Joseph E. Fahey (4/6/01) ("April, 2001

Order") at p. 2.[9]  The Appellate Division denied Hightower's application for

leave to appeal that decision to the Fourth Department.  *See People v.

Hightower*, No. 2000-252-1 (4th Dept. July 23, 2001).

In his direct appeal of his conviction, Hightower argued, *inter alia*, that:

i) the trial court erred in denying defense counsel's claim that the jury's

verdict was repugnant; ii) Hightower was denied his right to be present at all

material stages of his trial; and iii) the cumulative error committed at

Hightower's trial deprived him of his right to a fair trial.  *See* Appellate Brief

(2/15/01) ("App. Br.").[10]  On September 28, 2001, the Appellate Division

affirmed Hightower's conviction in all respects.  *People v. Hightower*, 286

A.D.2d 913 (4th Dept. 2001).  The New York Court of Appeals thereafter

denied Hightower's application for leave to appeal.  *People v. Hightower*, 97

---

[8]    That section of the CPL provides that a trial court "must deny a motion to vacate a judgment when ... [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  *See* CPL § 440.10(2)(b).

[9]    That court also opined that "[i]f this Court were to reach the merits, however, it would be inclined to deny the motion."  April, 2001 Order at p. 2.

[10]    Counsel's brief did not, however, allege that Hightower received the ineffective assistance of counsel.  *See* App. Br.

N.Y.2d 656 (2001).

On January 19, 2002, Hightower filed an application seeking a writ of error *coram nobis* with the Appellate Division.  In that application, he argued that his appellate counsel rendered ineffective assistance by failing to argue on appeal that:  i) the Indictment was defective; ii) Hightower had received the ineffective assistance of trial counsel; and iii) the Indictment improperly joined two distinct claims.  *See Coram Nobis* Application (1/18/02).  That request was opposed by the District Attorney's office on February 6, 2002, and on April 26, 2002, the Fourth Department denied that application.  *See People v. Hightower*, 294 A.D.2d 965 (4th Dept. 1992).

On August 25, 2002, Hightower filed his final state court challenge relating to his conviction by way of a second CPL § 440.10 motion.  In that collateral challenge to his conviction, Hightower argued that newly discovered evidence, in the form of a statement of his sister, Angela Hightower, was not timely disclosed to the defense, in violation of Hightower's right to all exculpatory evidence.  *See* CPL § 440 Motion (8/25/02) ("Second CPL Motion").  In his order dated October 28, 2002, Judge Fahey concluded that Angela Hightower's statement was not "exculpatory material," and that the document was therefore "not

8

discoverable pursuant to *Brady* ...."  *See People v. Hightower*, No. 2000-252-1 (Onon. Cty. Ct. Oct. 28, 2002) at p. 2.  That court further determined that there was no "reasonable possibility that the outcome of the trial would have differed" had the statement been known to the defense prior to trial.  *Id.* at pp. 2-3.  Therefore, Judge Fahey denied Hightower's Second CPL Motion.  *Id*. at p. 3.  Petitioner's application for leave to appeal that decision was apparently denied by the Appellate Division.[11]

### B.   Proceedings in this Action

Hightower filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this District on May 21, 2002.  Docket no. 1.  This Court then ordered a response to that pleading.  Docket no. 2.  The Office of the Attorney General for the State of New York ("Attorney General"), acting on respondent's behalf, filed an answer and memorandum of law requesting dismissal of the petition.  *See* docket nos. 6-7.  Hightower then filed a "Traverse" in further support of his application.  Docket no. 8.

On March 31, 2003, Hightower filed a motion to amend his habeas

---

[11]     Although this Court was provided with a copy of Hightower's application for leave to appeal Judge Fahey's decision denying Hightower's Second CPL Motion, it was not provided with a copy of any order of the Appellate Division addressing that application.  However, because neither party refers to any decision of the Fourth Department relating to the Second CPL Motion, it appears as though Hightower's application for leave to appeal was denied.

petition to permit him to assert an additional ground in his application.

Docket no. 12.  That application was opposed by respondent (docket no.

14), and on April 24, 2003, this Court granted Hightower's motion to amend.

Docket no. 15.  Petitioner thereafter filed his amended petition.  Docket no.

16 ("Am. Pet.").  In that pleading, Hightower asserts several different

grounds for relief,[12] including his claims that:  i) he received ineffective

assistance of trial and appellate counsel; ii) the trial court provided

erroneous instructions to the jury; iii) he was deprived of his right to be

present at all material stages of his trial; iv) the Indictment improperly joined

two disparate offenses; and v) he was denied his right to a fair trial due to

prosecutorial misconduct.  *See* Am. Pet.  Respondent filed his answer to

that amended petition (docket no. 18), as well as a memorandum of law in

opposition to that pleading (docket no. 19) ("Opposition Mem.").

## II.   Discussion

### A.   Release from Prison

---

[12]      As will be seen, some of the grounds asserted in the amended petition
are legally redundant or allege multiple legal theories in support of a particular
ground for relief.  For example, the first, second, third and fifth grounds all contain
arguments in which Hightower alleges that he received the ineffective assistance of
trial counsel.  *See* Am. Pet. After having reviewed the submissions, the Court has
found it appropriate to consider Hightower's amended petition by reference to the
legal theories raised by him, rather than by the particular ground in which he has
asserted his claims.

Subsequent to the commencement of this action, Hightower was apparently released from prison on parole.  *See* docket no. 23 (notice of change of address filed by Hightower indicating private residence as current address).  Therefore the Court considers whether this action has been rendered moot by his release.[13]

28 U.S.C. § 2254 does not require that a petitioner be physically confined in order for a federal district court to retain jurisdiction over the habeas petition.  *See Maleng v. Cook,* 490 U.S. 488, 491 (1989).  Thus, a petitioner who has been released from custody after filing his petition satisfies the "in custody" requirement of § 2254 if he remains subject to adverse collateral consequences which result from the subject conviction. *See Carafas v. LaVallee*, 391 U.S. 234, 237-39 (1968).

In this case, Hightower's amended petition does not appear to have been rendered moot by his release from prison; his habeas application was filed while he was in custody, and the collateral consequences which still

_____

[13]     Although the respondent has not argued that this action is moot, Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F.Supp.2d 157, 160 (E.D.N.Y. 2003). Therefore, federal courts should consider the issue of its subject matter jurisdiction *sua sponte*.  *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)).

exist as a result of his felony conviction preclude a finding that this matter is

moot.[14]  *Spencer*, 523 U.S. at 12 ("it is an 'obvious fact of life that most

criminal convictions do in fact entail adverse collateral legal

consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)); *see

also Binder v. Szostak*, 1997 WL 176353 (N.D.N.Y. Apr. 11, 1997) (Pooler,

D.J.) (adopting Report-Recommendation) (citations omitted).  Therefore the

Court reviews the claims raised by Hightower in his amended petition.

## B.   Procedurally Barred Claims

### 1.   Unexhausted Claims

Respondent argues that petitioner failed to raise several of the legal

theories he asserts in the present action in the state courts below.

Specifically, he contends that many of Hightower's theories alleging

ineffective assistance of trial counsel are unexhausted.  *See* Opposition

Mem. at pp. 11-14.  Respondent further claims that Hightower has not

exhausted his habeas claims that:  i) the trial court's instructions to the jury

were erroneous; ii) petitioner was denied his right to be present at all

material stages of his trial; and iii) the Indictment improperly joined two

---

[14]      Examples of such collateral consequences include the inability to serve
as a juror, engage in certain businesses, or vote.  *Johnson v. Levine*, 2001 WL
282719, at *1 (S.D.N.Y. Mar. 21, 2001).

distinct criminal offenses in one accusatory instrument.  *Id*. at pp. 15-19.

It is well settled that a federal district court "may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'"  *Shabazz v. Artuz*, 336 F.3d 154,160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted)); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir.) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)), *cert denied sub nom.*, *Galdamez v. Fischer*, ___ U.S. ___, 125 S.Ct. 1996 (2005).  As the Supreme Court noted in *O'Sullivan,* "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *O'Sullivan*, 526 U.S. at 844; *see also Galdamez*, 394 F.3d at 72 (quoting *O'Sullivan*).[15]  Moreover, the burden of demonstrating full exhaustion of

_____

[15]    This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan* 526 U.S. at 845; *see also Galdamez*, 394 F.3d at 72 (citing *O'Sullivan*).

available state remedies lies with the petitioner. *See Curry v. Burge*, 2003 WL 21230625, at *1 (S.D.N.Y. May 22, 2003) (citation omitted); *Cruz v. Artuz*, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citations omitted); *Ruine v. Walsh*, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citation *Colon*).

This Court has reviewed the state court record below in order to determine whether Hightower raised all of the legal theories he asserts in this action in the state courts. That review establishes that Hightower has not previously asserted in the state courts his federal claims that trial counsel improperly failed to: i) comprehend "relevant criminal law" (Ground One); ii) make timely and specific objections (Ground One); iii) move to dismiss the Indictment on the grounds of its "multiplicity and duplicity" (Ground Two); iv) call "missing witnesses" at trial (Ground Three); v) object to prejudicial and inadmissible hearsay (Ground Three); and vi) object to the prosecution's failure to produce confidential informants at the time of Hightower's trial (Ground Three).[16] Additionally, Hightower did not argue in the state courts his federal claims that: i) the trial court's jury instructions were defective because they did not advise the jury that the two counts in

---

[16]    Petitioner was represented by Thomas Lenkiewicz, Esq. at trial and by Philip Rothschild, Esq. on appeal.

the Indictment were to be considered in the conjunctive rather than the alternative (Ground Two); ii) he was deprived of his right to be present at side bars and colloquies conducted by the trial court, including times when the trial court "instructed (and also re-instructed)" the jury (Ground Three); and iii) the Indictment was defective because it improperly joined two discrete criminal acts in one accusatory instrument (Ground Four). Therefore, all of these claims are unexhausted.

When federal habeas claims have never been presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[17]  Therefore, this Court must determine whether it would be futile for Hightower to present any of the above-mentioned legal theories to the state courts.

Hightower cannot now pursue any of these claims through a second

---

[17]     Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

appeal to the Fourth Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, Hightower could not now properly raise any of the foregoing claims, all of which are based on matters contained in the state court record, in a third motion to vacate his judgment of conviction pursuant to CPL § 440.10, because "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10(2)(c)); *see also Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  Therefore, these claims are "deemed exhausted" for purposes of petitioner's habeas application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004), *cert. denied sub nom.*, ___ U.S. ___, 125 S.Ct. 871 (2005); *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *Spence*, 219 F.3d at 170.

Federal courts may only consider the substance of procedurally defaulted claims where the petitioner can establish both cause for the

procedural default and resulting prejudice, or alternatively, that a

fundamental miscarriage of justice would occur absent federal court

review.[18]  *Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at

184 ("[i]n the case of procedural default (including where an unexhausted

claim no longer can proceed in state court), [federal courts] may reach the

merits of the claim 'only if the defendant can first demonstrate either cause

and actual prejudice, or that he is actually innocent'") (quoting *Bousley v.*

*United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *see*

*generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *King v. Greiner*,

210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from

considering unexhausted claims "unless petitioner can establish cause to

excuse the default and prejudice, or actual innocence"); *Lora v. West*, 2005

WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted); *Morales v.*

*Sabourin*, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

　　　To establish legal "cause" which would enable this Court to consider

the above claims, Hightower must show that some objective external factor

impeded his ability to assert these claims in the state courts.  *See Coleman*,

---

[18]　　　A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.), *cert. denied*, 537 U.S. 955 (2002).

501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Wilson v. Supt., Attica Corr. Facility*, 2003 WL 22765351, at \*3 (N.D.N.Y. Nov. 24, 2003) (Sharpe, D.J.) (citing *Coleman* and *Restrepo*), *appeal dismissed*, (2d Cir. Sept. 16, 2004) (unpublished); *Fabian v. Herbert*, 2003 WL 173910, at \*2-4 (S.D.N.Y. Jan. 23, 2003).  Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray*, 477 U.S. at 488; *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993); *Lovacco v. Stinson*, 2004 WL 1373167, at \*3 (E.D.N.Y. June 11, 2004) (citing *Murray*).  However, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  *Coleman*, 501 U.S. at 752-53 (quoting *Murray*, 477 U.S. at 488).

Hightower has not established legal cause for his failure to exhaust any of the above claims.  Petitioner himself chose to refrain from asserting any of the above-referenced unexhausted claims in the *pro se* motion to vacate his sentence he filed before his direct appeal of his conviction was perfected, or in any of his other collateral challenges to his convictions.

Since he has not established cause for his failure to exhaust, this Court

need not decide whether he suffered prejudice, because federal habeas

relief is generally unavailable as to procedurally barred claims unless **both**

cause and prejudice is demonstrated.[19] *Stepney v. Lopes*, 760 F.2d 40, 45

(2d Cir. 1985); *Miller v. Bennett*, No. 98-CV-0661, 2004 WL 1573874, at *10

(W.D.N.Y. May 22, 2004) ("[s]ince petitioner cannot show cause for his

procedural default, this court need not reach the question of whether he can

show prejudice") (citing *Stepney*); *Jones v. Barkley*, No. 9:99-CV-1344,

2004 WL 437468, at *9 (N.D.N.Y. Feb. 27, 2004) (Sharpe, D.J.) (collecting

cases); *McLeod v. Moscicki*, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22,

2003) (Francis, M.J.) (citing *Murray*, 477 U.S. at 494); *Pou v. Keane*, 977

F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

     This Court also cannot properly excuse Hightower's failure to exhaust

based upon a finding of actual innocence.  "To establish actual innocence,

petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely

than not that no reasonable juror would have convicted him.' " *Bousley*, 523

U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995))

---

     [19]     The petitioner bears the burden of demonstrating cause for the
procedural default and resulting prejudice.  *See Simpson v. Portuondo*, 2002 WL
31045862, at *5 (S.D.N.Y. June 4, 2002).

(additional citation omitted).  "Actual innocence means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623-24 (internal quotation and citation omitted).  This Court's review of the state court record does not support a claim that Hightower is actually innocent of the fourth degree CPCS charge of which he was convicted.

In light of the foregoing, the Court recommends that the above-referenced claims be denied as unexhausted and procedurally barred.

### 2.   Procedurally Defaulted Claim

Respondent also argues that Hightower is precluded from obtaining habeas relief on his ineffective assistance claim which argues that his trial counsel wrongfully failed to seek the suppression of the drugs obtained during the execution of the search warrant.  Opposition Mem. at pp. 10-11. Specifically, respondent claims that because Judge Fahey determined that Hightower was procedurally barred from raising that claim in his Initial CPL Motion (*see* April, 2001 Order at (unnumbered) p. 2), petitioner cannot now obtain federal habeas relief on this claim.  Opposition Mem. at pp. 10-11.

A federal habeas court is precluded from reviewing a claim if the state courts' rejection of that same argument rests on "independent and adequate state grounds."  *Coleman*, 501 U.S. at 736; *Jones v. Stinson*, 229 F.3d 112,

117 (2d Cir. 2000).  This occurs when the last state court rendering a

decision held that its judgment rested on a state procedural bar.  *Harris v.*

*Reed*, 489 U.S. 255, 262 (1989); *Jones*, 229 F.3d at 118; *Marengo v.*

*Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004) (citations omitted).  As

with unexhausted claims, where that state court decision clearly and

expressly indicates that its determination rests on a state procedural bar, a

federal court may not review the claim unless the petitioner demonstrates

"both good cause for and actual prejudice resulting from his noncompliance

with the state's procedural rule."  *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d

Cir. 1999) (citing *Engle v. Isaac*, 456 U.S. 107, 129 (1982) (other citation

omitted); *Fama v. Commissioner of Correctional Services*, 235 F.3d 804,

809 (2d Cir. 2000); *Long v. Donnelly*, 335 F.Supp.2d 450, 464 (S.D.N.Y.

2004) (citing *Garcia*); *Livingston v. Herbert*, 2002 WL 59383, at *2 (N.D.N.Y.

Jan. 3, 2002) (Homer, M.J.), *adopted*, No. 00-CV-1698, docket no. 20

(N.D.N.Y. Jan. 24, 2002), *appeal dismissed*, No. 02-2083, slip op. at p. 1

(2d Cir. Aug. 28, 2002) (unpublished).  Additionally, review of a procedurally

defaulted claim is available where a fundamental miscarriage of justice

would occur absent federal court review.  *Dixon*, 293 F.3d at 80; *Morales v.*

*Greiner*, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

21

In his Initial CPL Motion, Hightower argued that his attorney failed to "competently raise" a Fourth Amendment claim regarding the drugs seized on the night the search warrant was executed.  *See* Memorandum in Support of Initial CPL Motion at pp. 2-6.  In denying that application, Judge Fahey found that because the claims Hightower asserted were based upon matters contained in the record, the "denial of the motion [was] required by CPL § 440.10(2)(b)."  *See* April, 2001 Order at (unnumbered) p. 2.

The denial of a claim pursuant to CPL § 440.10(2)(b) is an adequate and independent state procedural ground barring federal habeas review of the claim.  *See Burke v. Barkley*, No. 99-CV-1790, docket no. 19, slip op. at pp. 8-10 (N.D.N.Y. Feb. 24, 2004) (Sharpe, D.J.) (citing *Curry v. Bennett*, 2003 WL 22956980, at *15 (E.D.N.Y. Oct. 17, 2003)) (other citations omitted)); *Hernandez v. Filion*, 2004 WL 286107, at *8 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), *adopted*, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004); *Muhammad v. Kirk*, 1993 WL 37502, at *3 (S.D.N.Y. Feb. 8, 1993).  Since the last state court decision relating to this issue clearly and expressly rested on a procedural bar, this Court may only properly consider the substance of petitioner's ineffective assistance claim relating to trial counsel's failure to file a suppression motion if he demonstrates both cause

22

for his procedural default and prejudice, or alternatively a fundamental miscarriage of justice. *Dretke v. Haley*, 541 U.S. 386, 392-93 (2004); *DeBerry v. Portuondo*, 403 F.3d 57, 64 (2d Cir.  2005); *Ferguson v. Walker*, 2002 WL 31246533, at *2 (S.D.N.Y. Oct. 7, 2002) (citing *Fama*, 235 F.3d at 809) (other citation omitted).

In an effort to establish cause for his procedural default, Hightower alleged in the state courts, and claims in the present action, that his appellate counsel rendered ineffective assistance by failing to claim on appeal that trial counsel's performance was deficient because he failed to file a suppression motion*.  See Coram Nobis* Application at pp. 11, 20, 26, 36 and 39; Am. Pet, Ground Four.

However, as is discussed more fully below, Hightower's ineffective assistance claim relating to appellate counsel is without merit.  Therefore, appellate counsel's allegedly deficient performance cannot establish "cause" in this action excusing Hightower's procedural default relating to his federal habeas claim alleging ineffective assistance of trial counsel.  *See Larrea v. Benett*, 2002 WL 1173564, at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.) (where ineffective appellate counsel claim is without merit, that claim "may not serve as 'cause' for the procedural default of his ineffective trial counsel

claim") (citing *Aparicio*, 269 F.3d at 92-93), *adopted*, *Larrea v. Bennett*,

2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), *aff'd*, *Larrea v. Bennett*, 368

F.3d 179, 184 (2d Cir. 2004) ("Because [petitioner] cannot prevail on his

appellate counsel claim, he cannot overcome the procedural obstacles to

consideration" of his procedurally barred ineffective assistance of trial

counsel claim).

Since Hightower has not established cause for his procedural default

or that this Court's failure to consider the merits of this claim would result in

a fundamental miscarriage of justice, the Court recommends that this aspect

of Hightower's habeas claim alleging ineffective assistance of trial counsel

be denied and dismissed as procedurally barred.

## C.    <u>Standard of Review Applicable to Remaining Claims</u>

Under the AEDPA, a federal court cannot grant habeas relief to a

state prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was
> > contrary to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court
> > of the United States; or
> >
> > 2) resulted in a decision that was based

> on an unreasonable determination of the
> facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry*, 403 F.3d at 66; *Miranda v. Bennett,*

322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88

(2d Cir. 2001).

The Second Circuit has provided additional guidance concerning

application of this test, noting that

> [u]nder AEDPA, we ask three questions to determine
> whether a federal court can grant habeas relief: 1)
> Was the principle of Supreme Court case law relied
> upon in the habeas petition "clearly established"
> when the state court ruled? 2) If so, was the state
> court's decision "contrary to" that established
> Supreme Court precedent? 3) If not, did the state
> court's decision constitute an "unreasonable
> application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and*

*Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  When a state

court's decision has been decided on the merits, that decision is "contrary

to" established Supreme Court precedent if it applies a rule that contradicts

Supreme Court precedent, or decides a case differently than the Supreme

Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529

U.S. 362, 405-06 (2000)  Moreover, a federal court is not to consider

25

whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Id.*, 529 U.S. at 409; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir. 2001); *Valtin v. Hollins*, 248 F.Supp.2d 311, 314 (S.D.N.Y.  2003).  In this regard, the Second Circuit has observed that "[a]lthough some increment of incorrectness beyond error is required ... the increment need not be great." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation and citation omitted).

### 1.    Ineffective Assistance of Appellate Counsel

In both his first and second grounds for relief, petitioner argues that his appellate counsel rendered ineffective assistance.  *See* Am. Pet. Specifically, Hightower claims that he advised his appellate counsel that trial counsel's performance was deficient in "numerous" ways, but that appellate counsel failed to assert an ineffective assistance claim on appeal.  Am. Pet., Ground One.  Petitioner also faults appellate counsel for failing to argue that the Indictment was "duplicitous and multiplicitous," and refers this Court to his *Coram Nobis* Application as support for his argument that his appellate counsel rendered ineffective assistance as to this claim.  Am. Pet., Ground Two.  Respondent argues that Hightower's habeas claim challenging the

performance of appellate counsel is without merit.  Opposition Mem. at pp. 8-10.

### i.      Clearly Established Supreme Court Precedent

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., amend. VI.  This Amendment has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right. *Douglas v. California*, 372 U.S. 353, 358 (1963).  Thus, an individual is entitled to the effective assistance of appellate counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14. (1970).  The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Smith v. Robbins*, 528 U.S. 259, 287-89 (2000).  In *Strickland*, the Supreme Court concluded that to establish a violation of a right to the effective assistance of counsel, a party must typically show both: 1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and 2) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have

27

been different.  *Strickland*, 466 U.S. at 688-90; *see Wiggins v. Smith*, 539
U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective
assistance of counsel" were established by the Supreme Court in
*Strickland*).

### ii.   Contrary to, or Unreasonable Application of, Supreme Court Precedent

The Fourth Department found Hightower's ineffective assistance of
appellate counsel claim to be without merit.  *Hightower*, 294 A.D.2d at 965.
Therefore, this Court must determine whether that finding is either contrary
to, or involves an unreasonable application of, *Strickland* and its progeny.

### a.   Suppression Motion

Throughout his *Coram Nobis* Application, Hightower claims that
appellate counsel wrongfully failed to argue on appeal that trial counsel
rendered ineffective assistance by failing to file a suppression motion in the
state courts.  *See Coram Nobis* Application at pp.11, 20, 36 and 39.

In order to establish standing to bring a Fourth Amendment
suppression motion, a defendant must show that he had a reasonable
expectation of privacy over the area entered and searched.  *United States v.
Salvucci*, 448 U.S. 83, 92-93 (1980); *People v. Rodriguez*, 69 N.Y.2d 159,
161 (1987) (an individual must have personal standing to challenge

governmental action alleged to be in violation of an individual's right to be free of unreasonable searches and seizures) (citations omitted).  In considering whether an individual may properly assert a privacy interest in a residence, courts must determine whether the individual's claim of privacy "is reasonable in light of all the surrounding circumstances."  *Rodriguez*, 69 N.Y.2d at 162 (citing *Rakas v. Illinois*, 439 U.S. 128, 152 (1978)).  As the *Rodriguez* court noted:

> The number of times a person stays in a particular place, the length and nature of the stay, the indicia of connectedness and privacy, like change of clothes or sharing expenses or household burdens, are all factors which may alone or in combination with other factors support a reasonable expectation of privacy which is protected by the Fourth Amendment.

*Rodriguez*, 69 N.Y.2d at 163 (citations omitted).

The state court record reveals that the apartment at which the search warrant was executed belonged to Hightower's sister, a fact petitioner admitted when he testified before the grand jury.  *See* App. at p. A83 (Hightower stating that he had "no connection with [the apartment] except that it's my sister [*sic*] house and I was visiting her").  Hightower further testified before the grand jury that he had not seen his sister "in a while" and he only visited her "vaguely."  App. at pp. A83-86.

29

"[A]n occasional visitor to [an] apartment ... lacks standing to challenge [a] search [of the premises]."  *People v. Sommerville*, 6 A.D.3d 1232 (4th Dept.) (citing *Rodriguez*), *leave denied*, 3 N.Y.3d 648 (2004); *People v. Christian*, 248 A.D.2d 960 (4th Dept.) (individual has no "legitimate expectation of privacy in ... apartment[] in which [defendant] was a recent and occasional visitor"), *leave denied*, 91 N.Y.2d 1006 (1998); *United States v. Morales*, 568 F.Supp. 646, 649 (E.D.N.Y. 1983) ("[d]efendants lack standing to challenge the search of ... residence since they were merely casual visitors").

Additionally, Officer Babbage observed the drugs fall from Hightower's waistband as he was being detained during the execution of the search warrant.  *See* Trial Tr. at pp. 257-58.  Therefore, that contraband could properly be seized and thereafter used against Hightower at trial. *Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993) (under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant"); *Sam v. Brown*, 2002 WL 31102644, at *3 (E.D.N.Y. Sept. 10,  2002) (no Fourth Amendment claim where police were lawfully in a position in which to

view an incriminating object seized without warrant); *People v. Spencer*, 272 A.D.2d 682, 682-83 (3d Dept. 2000) (property discovered in apartment in plain view during the execution of a valid search warrant admissible at trial), *leave denied*, 95 N.Y.2d 858 (2000).

Since Hightower had no privacy interest in his sister's residence, it was not objectively unreasonable for appellate counsel to refrain from claiming that trial counsel rendered ineffective assistance by failing to file a suppression motion. Moreover, the drugs that fell from Hightower's waistband were properly seized without a warrant by Officer Babbage because they were in plain view at the time he executed the search warrant. In light of the foregoing, this Court agrees with the Appellate Division that Hightower's appellate counsel did not render ineffective assistance by failing to raise this issue on appeal.

### b.   Legal Deficiencies Regarding the Indictment

Hightower also alleges that appellate counsel rendered ineffective assistance by failing to argue on appeal that the Indictment was "duplicitous and multiplicitous." Am. Pet., Ground Two. Petitioner further contends that appellate counsel should have argued that trial counsel was ineffective because he failed to seek dismissal of the Indictment on that basis, as well

as a theory that the Indictment improperly joined two distinct criminal offenses in one accusatory instrument.  Am. Pet., Ground Two; *Coram Nobis* Application at pp. 13-14, 49-50.

An indictment is multiplicitous when two separate counts charge the same crime.  *Thompson v. United States*, 2005 WL 1173560, at *2 (N.D.N.Y. May 2, 2005) (McAvoy, S.J.) (citing *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir.), *cert. denied* ___ U.S. ___, 125 S.Ct. 364 (2004)); *People v. Nailor*, 268 A.D.2d 695, 696 (3d Dept. 2000) (citation omitted).  An indictment is invalidly duplicitous when it joins two or more distinct crimes in a single count.  *United States v. Nunez*, 2001 WL 91708, at *4 (S.D.N.Y. Feb. 1, 2001) (citation omitted); *United States v. Martino*, 2000 WL 1843233, at *4 (S.D.N.Y. Dec. 14, 2000) (citations omitted); *United States v. Seda*, 1992 WL 18273, at *3 (S.D.N.Y. Jan. 29, 1992), *aff'd*, 978 F.2d 779 (2d Cir. 1992).

The indictment on which Hightower was tried was neither multiplicitous nor duplicitous.  The first count alleged that Hightower possessed cocaine weighing one-eighth of an ounce or more, while the second count alleged that Hightower possessed cocaine without reference to its weight.  *See* Indictment.  Moreover, the jury's verdict strongly suggests that it viewed the

32

Indictment as charging Hightower with committing two distinct crimes;
criminally possessing the cocaine observed falling from his waistband
(which weighed in excess of one-eighth of one ounce) and not criminally
possessing the cocaine Officer Babbage discovered on the television stand
(which contained less than one-eighth of an ounce of cocaine).[20]  Since the
Indictment was neither multiplicitous nor duplicitous, appellate counsel was
not ineffective for failing to argue that issue on appeal, or claim in his
appellate brief that trial counsel was ineffective because he did not move to
dismiss the Indictment on that basis.

As to Hightower's claim that appellate counsel wrongfully failed to
argue that the Indictment included improperly joined claims, *see Coram
Nobis* Application at pp. 28-34; Am. Pet., Ground Four,[21] the Second Circuit
has recognized that joinder of claims in a single indictment against a
defendant is proper due to the valid governmental interest of trying different
crimes against the same person in the same trial.  *Herring v. Meachum*, 11
F.3d 374, 377 (2d Cir. 1993) (citing *Spencer v. Texas*, 385 U.S. 554, 562

---

[20]     The jury was never instructed that the second count in the Indictment
was to be considered a lesser included offense of the first count.  *See* Trial Tr. at pp.
419-25.

[21]     As noted above, petitioner's independent claim that his conviction
should be overturned because the Indictment was defective because it improperly
joined distinct offenses is both unexhausted and procedurally barred.

(1967)), *cert. denied*, 511 U.S. 1059 (1994); *see also Reed v. Great Meadow Correctional Facility*, 981 F.Supp. 184, 188 (W.D.N.Y. 1997).  As the *Herring* court noted, "joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial."  *Herring*, 11 F.3d at 377 (internal quotation and citation omitted).

Furthermore, the CPL specifically authorizes the joinder of claims in an indictment in factual situations similar to those present in the criminal matter below.  Specifically, CPL § 200.20 provides that separate offenses may be joined in one indictment where the charges:

> (a) ... are based upon the same act or upon the same criminal transaction, ... or
>
> (b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first; ....

CPL § 200.20(2).  As the First Department held in *People v. Napolitano*, 106 A.D.2d 304, (1st Dept. 1984), *aff'd*, 66 N.Y.2d 852 (1985), joinder of offenses under that section of the CPL "has been repeatedly upheld as constitutional."  *Napolitano*, 106 A.D.2d at 305 (citation omitted).

34

In light of the above, it is clear that appellate counsel did not render ineffective assistance by failing to argue on appeal that trial counsel wrongfully failed to seek the dismissal of the Indictment.

### c.   Jury Questions and Instructions

In his *Coram Nobis* Application, Hightower claimed that appellate counsel failed to argue that petitioner was wrongfully absent from the portion of the trial when the trial court formulated a response to a question posed by the jury during its deliberations. *Coram Nobis* Application at p. 16.  Am. Pet., Ground Three.  Hightower also argued in his Coram Nobis Application that defense counsel improperly failed to request a "missing witness instruction" from the trial court, and that appellate counsel's failure to raise that issue on appeal constituted ineffective assistance.  *Coram Nobis* Application at pp. 21-23, 47-48.[22]

Hightower's claim that he was not present when a proposed response concerning the jury's request for clarification of the term "possession" cannot afford petitioner a basis for the relief he seeks.  Although the trial court initially discussed this issue in Hightower's absence, *see* Trial Tr. at

---

[22]     It is not clear to this Court whether petitioner asserts herein that appellate counsel rendered ineffective assistance by failing to argue that trial counsel improperly failed to request a missing witness instruction.  *See* Am. Pet., Ground One.

pp. 436-38, the record reflects that as that discussion progressed, the trial court specifically asked defense counsel whether petitioner should be present for the discussion, after which Hightower was brought into the courtroom.  Trial Tr. at p. 438.  The trial court then read into the record the jury's question, after which defense counsel restated his position regarding what he believed should be the court's response to the question posed. Trial Tr. at pp. 438-39.  Hightower never addressed the court during that time or the ensuing discussion relating to the jury's note.  Trial Tr. at pp. 439-42.  Thus, appellate counsel properly refrained from arguing that Hightower's counsel rendered ineffective assistance by failing to ensure Hightower's presence during that aspect of his criminal trial.

Petitioner also argued in his *Coram Nobis* Application, and appears to assert in this action, that defense counsel wrongfully failed to request a missing witness instruction.  *See Coram Nobis* Application at pp. 21-23, 47-48; Am. Pet., Ground One.  The record reflects that Detective William Kelly of the Syracuse Police Department applied for the search warrant that was subsequently executed at the Costello Court address.  App. at pp. A65-70. That application referred to two confidential informants with whom Detective Kelly had worked in his investigation into the sale of drugs at the Costello

36

Court residence.  App. at pp. A67-69.  Based upon the purchases of drugs

made by the confidential informants at the Costello Court residence (to

which Detective Kelly referred in his application for a search warrant

concerning that address), Detective Kelly obtained the search warrant.  App.

at pp. A63-64.  Petitioner appears to argue that appellate counsel wrongfully

failed to argue that trial counsel rendered ineffective assistance by failing to

call Detective Kelly and/or the two confidential informants as witnesses at

trial.  *Coram Nobis* Application at pp. 21-23, 47; Am. Pet., p. 8.

A missing witness instruction allows the jury to draw an adverse

inference that the testimony of uncalled witnesses would have been

unfavorable to the party that declined to call them.  *See United States v.

Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988).  However, "such a charge is

appropriate only when a party has within its control a material witness who

would naturally be expected to testify favorably to that party, but does not."

*Funderbird-Day v. Artuz,*  2002 WL 31427345, at *7 (S.D.N.Y. Oct. 29,

2002).

In the underlying criminal action, Hightower was not charged with

selling cocaine.  Since neither of the two confidential informants were

involved in the execution of the search warrant, they could not have offered

any testimony about the criminal conduct with which Hightower was charged

in the Indictment.  Thus, neither of those two informants would have

"naturally been expected to testify" on behalf of the prosecution.

With respect to Detective Kelly, it does not appear as though he was

one of the eleven members of the Syracuse police department who assisted

in the execution of the search warrant.  *See* App. at p. A44 (police report of

Officer Babbage listing names of officers who executed the search warrant).

Since Detective Kelly did not participate in the execution of the search

warrant, and four members of the police department who executed that

warrant testified at trial (*see* Trial Tr. at pp. 252, 289, 307 and 323), it

appears to this Court that even assuming, *arguendo*, that Detective Kelly

could have provided relevant testimony for the prosecution, that testimony

would merely have been cumulative of the testimony offered by other

prosecution witnesses.  Therefore, Hightower was not entitled to a missing

witness charge based upon Detective Kelly's failure to testify.  *People v.*

*Macana*, 84 N.Y.2d 173, 180 (1994) (missing witness charge inappropriate

where non-testifying officer's testimony would have been cumulative of other

testimony); *People v. McCalla*, 261 A.D.2d 967, 967 (4th Dept. 1999)

(affirming trial court's refusal to provide jury with missing witness charge;

testimony of non-testifying officer would have been cumulative of trial testimony of three other police officers who testified at trial).[23]  Thus, neither petitioner's claim regarding his failure to be present during the formulation of the trial court's response to the jury's question, nor counsel's failure to request a missing witness instruction, support Hightower's claim that his appellate counsel rendered ineffective assistance.

### d.    Right to be Present

Petitioner additionally argues that appellate counsel improperly failed to argue on appeal that trial counsel did not ensure Hightower's presence during portions of the jury *voir dire*, as well as the *Sandoval*[24] hearing allegedly conducted by the trial court.  Am. Pet., Ground One; *Coram Nobis* Application at p. 26.

However, as is discussed more fully below, Hightower's claim regarding his right to be present during the jury *voir dire* is without substance.  Therefore, petitioner cannot prevail on his claim that his appellate counsel rendered ineffective assistance in failing to argue that trial

---

[23]    As noted above, Hightower's claim that trial counsel improperly failed to call "missing witnesses" at trial, *see* Am. Pet. at p. 8, is unexhausted and procedurally barred.

[24]    *People v. Sandoval*, 34 N.Y.2d 371 (1974).

counsel's performance was deficient with respect to this aspect of the criminal trial below.

As to petitioner's claim regarding his absence from the alleged *Sandoval* hearing, the Court notes that the Fourth Department specifically found that no *Sandoval* hearing was conducted at the criminal trial below, and that Hightower neither objected to nor commented on the stipulation arrived at between defense counsel and the prosecution that was placed on the record regarding *Sandoval* issues that had arisen in the underlying criminal action.  *See Hightower*, 286 A.D.2d at 914-15.  Since no *Sandoval* hearing was conducted by the trial court, counsel was not ineffective in failing to argue that Hightower was improperly excluded from that hearing.

In sum, this Court concludes that the Appellate Division's decision denying Hightower's claim alleging ineffective assistance of appellate counsel (*Hightower*, 294 A.D.2d at 965) is neither contrary to, nor an unreasonable application of, the Supreme Court precedent referenced above.  Therefore the Court recommends that the grounds in Hightower's amended petition which allege that he received ineffective assistance of appellate counsel (Am. Pet., Grounds One, Two and Four) be denied.

## 2.      Right to be Present

Petitioner also argues that he was wrongfully deprived of his right to be present at all material stages of his trial.  Am. Pet., Ground Three.  As noted above, petitioner is procedurally barred from obtaining habeas relief as to several of the theories he asserts in support of this claim.  However, respondent has acknowledged that Hightower's claim that he was wrongfully deprived of his right to be present during portions of the jury *voir dire* is exhausted.  *See* Opposition Mem. at p. 17.  Therefore, this Court considers the substance of this claim.

### i.      Clearly Established Supreme Court Precedent

It is well settled that a criminal defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence." *Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); *see Illinois v. Allen*, 397 U.S. 337, 338 (1970).  This guaranty encompasses the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings," *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975), and assures that an accused may even attend hearings in which he is not actually confronting witnesses or evidence against him.  *See Kentucky v.*

41

*Stincer*, 482 U.S. 730, 745 (1987); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam).   However, as the Supreme Court has recognized the right to be present is not absolute:  it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fu[l]lness of his opportunity to defend against the charge."  *Snyder*, 291 U.S. at 105-06.  Thus, a defendant does not have a constitutional right to be present during a portion of a criminal proceeding when his "presence would be useless, or the benefit but a shadow."  *Snyder*, 291 U.S. at 106-07.

### ii.   Contrary To, or Unreasonable Application of, Supreme Court Precedent

Since the right to be present at all material stages of one's trial is clearly established in Supreme Court precedent, *see Evans v. Artuz*, 68 F.Supp.2d 188, 205 (E.D.N.Y. 1999), this Court must determine whether the Fourth Department's decision denying this aspect of Hightower's appeal (*Hightower*, 286 A.D.2d at 914-15) is contrary to, or involves an unreasonable application of, *Snyder* and its progeny.

Hightower's presence is specifically noted on the record during the jury *voir dire* on two occasions.  *See* Trial Tr. at pp. 72, 150.  On another occasion, it is not clear from the record whether Hightower was present during a portion of the jury *voir dire* (Trial Tr. at p. 118), while on the last

42

round of challenges petitioner's absence from that bench conference is noted.  Trial Tr. at pp. 218-19.

In rejecting Hightower's appellate claim that he was denied his right to be present at all material stages of his trial, the Appellate Division found that Hightower had previously agreed to defense counsel's proposed exercise of peremptory challenges regarding the potential jurors, and that therefore counsel's actions in formally exercising those challenges were "ministerial." *Hightower*, 286 A.D.2d at 914 (citation omitted).  Determination of factual issues made by a State court "shall be presumed to be correct," and a petitioner is required to rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *DeBerry*, 403 F.3d at 66.  In the present action, petitioner has not submitted any – much less clear and convincing evidence – which establishes that the Fourth Department wrongfully determined that he had consented to the actions ultimately undertaken by his attorney during the jury *voir dire*.  Therefore, since he would not have "gained anything by attending" the bench conferences at which his counsel exercised peremptory challenges regarding prospective jurors, he was not deprived of his right to be present at a material stage in his trial merely

43

because he was not present at those conferences.[25]  Therefore, this Court agrees with the Appellate Division's determination that Hightower's absence from portions of the jury *voir dire* did not deprive him of his right to be present during all material stages of his trial.

Since petitioner has failed to demonstrate that the Fourth Department's decision denying this aspect of his appeal is either contrary to, or an unreasonable application of, the Supreme Court precedent referenced above, this Court recommends that this aspect of his third ground for relief be denied.

### 3.   **Prosecutorial Misconduct**

In his final claim, petitioner argues that his conviction was the result of prosecutorial misconduct.  Am. Pet., p. 6.  Specifically, he argues that the

---

[25]      Hightower's counsel did not exercise any challenges, either peremptory or for cause, during the conference at which Hightower was clearly not present, except as to alternate jurors who ultimately did not participate in the jury's deliberations.  *See* Trial Tr.  at pp. 218-22, 435-36.  Although Hightower's counsel did exercise peremptory challenges at the conference where his presence is not clear from the record, Trial Tr. at pp. 118-19, petitioner has failed to establish that he was ***not*** present at that conference.  There is a "strong presumption of constitutional regularity in state judicial proceedings."  *Darr v. Burford*, 339 U.S. 200, 218 (1950).  Consequently, a habeas court will presume "regularity" in the conduct of the trial, absent substantial evidence to the contrary.  *See, e.g., Calizaire v. Lacy*, No. 94 CV 4027 1996 WL 586795, at *2 (E.D.N.Y. Oct. 10, 1996).  Self-serving declarations on the part of a habeas petitioner do not overcome this presumption.  *Honeycutt v. Ward*, 612 F.2d 36, 41 (2d Cir. 1979), *cert. denied* 446 U.S. 985 (1980).  Hightower's failure to prove his absence from that conference further undermines his claim that he was deprived of his right to be present at all material stages of his trial.

prosecution failed to provide him with a statement of his sister, Angela

Hightower, which he alleges constitutes *Brady* material.  *Id.*  He argues that

by withholding that evidence from Hightower, the prosecution also denied

him his rights to a fair trial and "compulsory Process in producing a material

witness."  *Id.*  Also included within this ground is Hightower's claim that the

prosecution "tampered with and altered" evidence.  *Id.*

### i.   Clearly Established Supreme Court Precedent

A criminal defendant's right to a fair trial is mandated by the Due

Process Clause of the United States Constitution.  *Albright v. Oliver*, 510

U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107

(1976)).  However, for habeas relief to be granted based on a claim of

prosecutorial misconduct, the alleged misconduct must have "'so infected

the trial with unfairness as to make the resulting conviction a denial of due

process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In considering such

a claim, courts are to focus on "the fairness of the trial, not the culpability of

the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Additionally, in *Brady*, the Supreme Court held that the "suppression

by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  To prove a *Brady* violation, a habeas petitioner must establish that:  1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  *Moore v. Illinois*, 408 U.S. 786, 795 (1972) (citing *Brady*); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

### ii.   Contrary To, or Unreasonable Application of, Supreme Court Precedent

The trial court denied Hightower's claims alleging prosecutorial misconduct on the merits.  *See* October, 2002 Order at p. 3.  Since the law applicable to claims alleging prosecutorial misconduct is clearly established, *see Davis v. Keane*, No. 97 CIV. 8328, 2000 WL 1041454, at *7-8 (S.D.N.Y. July 28, 2000) (citing *United States v. Young*, 470 U.S. 1, 11 (1985) and *Donnelly*, 416 U.S. at 642-43)), this Court must determine whether the trial court's decision rejecting that claim is either contrary to, or an unreasonable application of, the above-referenced Supreme Court precedent.

This Court agrees with the trial court that Hightower did not establish

46

that the prosecution committed any *Brady* violation.  Angela Hightower's

statement of December 6, 1999 – on which petitioner's *Brady* claim is based

– in no way exclupates Hightower.  Rather, as the trial court found, that

statement ***inculpates*** petitioner for the crime of possession of crack

cocaine.  *See* October, 2002 Decision at p. 2; Second CPL Motion at Exh.

A-5.  Although the information contained in that statement differs in some

respects from the information she had previously provided to Syracuse

Police Officer R.J. Stockwin on the night the search warrant was executed,

Hightower has not argued how either of those documents could have been

used to either support his claim of innocence or to impeach the testimony of

any of the prosecution's witnesses in any meaningful way.[26]

Next, Hightower's claim that evidence used against him at trial was

"tampered with and altered," *see* Am. Pet., p. 6, appears to relate to his

state court claim that although Officer Babbage testified at the grand jury

that the two bags he recovered during the search of the Costello Court

residence weighed 10.1 grams, the trial testimony established that the

cocaine seized pursuant to the search warrant weighed less than 5.5 grams.

*See* Second CPL Motion at Exh. A-7; Trial Tr. at pp. 344, 349.  Petitioner

---

[26]     Angela Hightower did not testify against Hightower at his trial.

argued in the state courts, and appears to assert in this action, that the above discrepancy demonstrates that authorities tampered with the evidence used against him at trial.  *See* Am. Pet., p. 6; Second CPL Motion at pp. 19-21.

However, Hightower's defense counsel chose not to cross-examine Officer Babbage about his grand jury testimony regarding the weight of the drugs at Hightower's trial, despite the fact that prior to trial, defense counsel had received reports from the Onondaga County Health Department's Center for Forensic Sciences which established that the drugs which the prosecution alleged were possessed by Hightower weighed a total of 5.46 grams.  *See* App. at pp. A71-72.[27]  Hightower has not presented any evidence which substantiates, in any way, his claim that either law enforcement agents or the prosecution tampered with the drug – or any other – evidence used against him at his trial.  Rather, the only evidence before the Court indicates that Officer Babbage merely provided incorrect testimony before the grand jury about the total weight of the cocaine seized

---

[27]     In opposing Hightower's Second CPL Motion, the District Attorney's Office conceded that Officer Babbage provided "erroneous grand jury testimony" when he claimed before that panel that the drugs seized from the residence weighed 10.1 grams.  *See* Affidavit of James P. Maxwell, Esq. in Opposition to Second CPL Motion (9/23/02) at p. 4.

on the evening of December 6, 1999.

Petitioner further argues that the prosecution's failure to produce the statement of Angela Hightower deprived petitioner of his "right to Compulsory Process in producing a material defense witness."  Am. Pet. at p. 6 (typeface in original).  In his Second CPL Motion, Hightower claimed that had he been aware of Angela Hightower's statement prior to trial, he would have called both Angela Hightower and Officer Stockwin as defense witnesses.  *See* Second CPL Motion at pp. 21-24.

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ...."  U.S. Const., amend. VI.   However, petitioner has never claimed, in the state courts or this action, that the trial court denied Hightower's request to call either Angela Hightower or Officer Stockwin as defense witnesses.  Rather, his compulsory process claim appears to be rooted in his contention that Angela Hightower's statement to Officer Stockwin constituted *Brady* material that the prosecution was required to disclose, and that by failing to disclose that statement, the prosecution effectively prevented petitioner from realizing the significance of the potential testimony of either Angela

49

Hightower or Officer Stockwin.  *See* Am. Pet. at p. 6; Second CPL Motion at

pp. 21-24.  However, where an individual fails to establish that the witnesses

upon whom his compulsory process claim is based would have provided

testimony that was both material and favorable to his defense, any

compulsory process claim must fail.  *Howard*, 406 F.3d at 132 (citing *United

States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).  In this context,

"'evidence is material only if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome.'"  *United States v. de Trabuc*, 1989

WL 38119, at *10 (S.D.N.Y. Apr. 7, 1989) (quoting *United States v. Bagley*,

473 U.S. 667, 682 (1985)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39,

57-58 (1987).

Petitioner has not established that either Angela Hightower or Officer

Stockwin would have offered material, favorable testimony on behalf of the

defense.  Officer Stockwin's report establishes that Angela Hightower

possessed cocaine on the night the search warrant was executed.  *See*

Second CPL Motion, Exh. A-7.  Later that evening, she informed Officer

Fowler that petitioner possessed crack cocaine.  *See* Second CPL Motion,

Exh. A-6.  Petitioner has not presented any evidence that Angela Hightower would have testified in a manner helpful to Hightower's defense if she had been called as a defense witness.  Additionally, based upon the contents of Angela Hightower's statement to Officer Stockwin (*see* Second CPL Motion, Exh. A-7), it appears to this Court as though Officer Stockwin could only have offered testimony which implicated Angela Hightower concerning a charge of drug possession; petitioner has not offered any evidence which indicates that Officer Stockwin could have provided exculpatory testimony on behalf of petitioner.

Since petitioner has not established that either Angela Hightower or Officer Stockwin would have provided testimony that was both material and favorable to Hightower's defense to the charges against him, he has failed to establish that he was denied his right to compulsory process.

Petitioner has failed to establish that the trial court's decision denying his Second CPL Motion alleging prosecutorial misconduct is either contrary to, or an unreasonable application of, the above-referenced Supreme Court precedent.  Therefore, this Court recommends that the fifth and final claim asserted by Hightower in his amended petition, which he has incorrectly labeled as "Ground One," *see* Am Pet., p. 6, be denied.

**WHEREFORE**, based upon the above, it is hereby

**RECOMMENDED**, that Hightower's Amended Petition be **DENIED and DISMISSED**.

**NOTICE**:  pursuant to 28 U.S.C. § 636(b)(1), the parties have **TEN (10) DAYS** in which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the Clerk.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e) and 72.

Dated:      June 28, 2005

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

52